UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA


ROBERT VINCENT VEGA, JR,

NO. 2:09-cv-00574-MCE-CKD

          Plaintiff,

     v.                                MEMORANDUM AND ORDER

COUNTY OF YOLO, E.G. PRIETO,
Sheriff of YOLO COUNTY, in his
capacity as Sheriff for the
COUNTY OF YOLO, and DOES 1 to
10, inclusive,

          Defendants.


                         ----oo0oo----


     Through the present lawsuit, Plaintiff Robert Vega

("Plaintiff") seeks redress, pursuant to 42 U.S.C. § 1983, for

alleged violations of his right to be free from cruel and usual

punishment as guaranteed by the Eighth Amendment to the United

States Constitution.  Named Defendants include Yolo County and

Sheriff E.G. Prieto, in his capacity as Yolo County Sheriff.

///

///

1

Defendants now move for summary judgment on grounds that there is
no evidence of deliberate indifference by any Defendant to
Plaintiff's serious medical needs so as to give rise to an Eighth
Amendment violation.  Defendants further argue that there is also
no evidence of any unconstitutional custom or policy on the part
of Defendants that caused or contributed to any deprivation of
medical care as to Plaintiff.

As set forth below, Defendants' Motion will be denied.

**BACKGROUND**

On October 31, 2007, while serving a 40-day sentence at Yolo
County's Leinberger jail facility for a parole violation,
Plaintiff was attacked in the restroom by other inmates at
approximately 9:25 a.m.  Plaintiff claims to have been beaten and
kicked repeatedly.  Although he complained of a burning sensation
to his neck area, Plaintiff did not initially request any medical
treatment and no visible injury was observed other than
redness/swelling to the left side of Vega's face.  Given the
altercation that occurred, however, Plaintiff was segregated and
transferred to the jail's Monroe facility at approximately noon.

According to Plaintiff, within a couple of hours after
arriving at the Monroe facility, he began to experience jaw and
abdominal pain.  See Pl.'s Dep., Ex. A to Decl. of Gregory Rueb,
33:3-34:2.  About an hour before dinner, he states he pressed the
intercom and requested immediate medical attention because the
abdominal discomfort had become severe.

///

2

1   The responding officer told Plaintiff to fill out a "pink slip"

2   for routine, non-urgent medical care[1] so that his condition could

3   be evaluated at the time of the morning "pill call"[2] the

4   following day, November 1, 2007.  See id. at 35:1-25.  Shortly

5   thereafter, at about the time dinner was served at 4:10 p.m.,

6   Plaintiff states he made a second in-person request for medical

7   care as one of the correctional officers was performing a welfare

8   check.  Plaintiff alleges that no help was forthcoming even after

9   he told the officer that he had developed vision problems that

10  made it difficult for him to see.  Id. at 41:7-42:3.  By early

11  evening, Plaintiff states he was experiencing extreme, "buckling-

12  over" pain that again prompted him to request medical attention

13  over the intercom.  He states that he was simply told to "wait

14  until pill call".  Id. at 33:7-34:2 and 36:19-37:10.  Sometime

15  during the night, Plaintiff reiterated his request for medical

16  assistance by way of intercom, this time telling the officer that

17  his abdominal discomfort had become so severe that he could

18  neither lie down or stand up.  According to Plaintiff, the

19  officer who responded told him the same thing: wait until pill

20  call.  The officer told Plaintiff to stopyes

21   using his call button.  Id. at 37:13-39:24.

22  ///

23  ///

24  ───────────────

25      [1] The evidence indicates that the mail's medical staff was
    administered by an independent private company, California
26  Medical Forensic Group, who would gather the pink medical care
    requests forms on a daily basis.

27      [2] "Pill call" refers to a twice-daily distribution of
    medications to inmates, at which time nurses could be approached
28  with problems/questions about an inmate's health.

1    Sometime in the early hours of November 1, 2007, Plaintiff
2  described yet another request for medical attention made over the
3  intercom.  Plaintiff states he told the responding officer that
4  he could no longer see, was in excruciating pain, was vomiting,
5  and had lost control of his bowels.  Plaintiff testified he was
6  again advised to wait until pill call.  Id. at 40:9-41:1;
7  42:16-20 and 47:20-48:4.

8    Although Plaintiff identified approximately five specific
9  occasions he claims to have requested medical assistance as
10 enumerated above, he believes he may have made as many as seven
11 or eight different requests, all without success.  Plaintiff was
12 ultimately discovered at about 10:30 a.m. on November 1, 2007, by
13 a nurse who described him as cold and clammy, sweating profusely,
14 semi-responsive and complaining of pain on the left side of his
15 abdomen with nausea and approximately 30 cc's of vomit.  When the
16 nurse was unable to palpate a pulse, obtain a blood pressure, or
17 elicit any pupil response, an ambulance was called and Plaintiff
18 was hospitalized.  He thereafter required emergency surgery,
19 where his spleen had to be removed because it had ruptured.

20   Jail records contain no reference to any complaint voiced by
21 Plaintiff before 8:40 a.m. on November 1, 2007.  Between cell
22 checks and other contact recorded in the jail's shift logs,
23 however, Plaintiff alleges that as many as 24 potential contacts
24 with officers occurred between 4:00 p.m. on October 31, 2007, and
25 10:25 a.m. the following morning.  Moreover, jail logs indicate
26 that during the three shifts that worked during this time period,
27 a total of nine different officers were on duty.  The logs
28 indicate that cell checks were done by seven of those officers.

4

1  See Pl.'s Add'l Undisputed Fact Nos. 26-52.  Cell checks were
2  supposed to occur on an hourly basis.  See Undisputed Fact
3  No. 12.

4      As indicated above, the logs do not document anything remiss
5  with respect to Plaintiff until less than two hours before he was
6  taken away by ambulance.  The officers deny any knowledge of a
7  serious condition on Plaintiff's part, arguing that because he
8  admittedly failed to scream or shout out for medical aid, there
9  was no obligation on their part to summon immediate aid.  See
10 Reply, 2:12-3:6; 5:19-25.  Defendants also claim that there is no
11 evidence reflecting that "any one guard received more than one
12 complaint from VEGA."  Id. at 5:21-22.  In stark contrast to the
13 version of events offered by Plaintiff, Defendants claim they
14 were never put on notice of a medical condition serious enough to
15 justify immediate medical care.

16     Plaintiff filed the present complaint in this Court on
17 February 27, 2009.  Through the First Cause of Action, directed
18 to Defendant Prieto in his official capacity, Plaintiff seeks to
19 recover compensatory damages and attorney's fees by alleging
20 cruel and unusual punishment in contravention of the Eighth
21 Amendment to the United States Constitution as enumerated above.
22 Plaintiff also alleges, by way of his Second Cause of Action,
23 that both Defendant Prieto and the County of Yolo acted in
24 deliberate indifference by failing to prevent deputies from
25 engaging in ongoing constitutional violations and practices.
26 ///
27 ///
28 ///

The Fourth and Seventh Causes of action also hinge on allegations
of Eighth Amendment deliberate indifference through allegations
of failure to provide adequate medical care and through
allegations that the County and Prieto were responsible for
negligent training/supervision/retention of officers in violation
of 42 U.S.C. § 1983.


**STANDARD**


The Federal Rules of Civil Procedure provide for summary
judgment when "the pleadings, depositions, answers to
interrogatories, and admissions on file, together with
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to a judgment
as a matter of law."  Fed. R. Civ. P. 56(c).  One of the
principal purposes of Rule 56 is to dispose of factually
unsupported claims or defenses.  Celotex Corp. v. Catrett,
477 U.S. 317, 325 (1986).

The standard that applies to a motion for summary
adjudication is the same as that which applies to a motion for
summary judgment.  See Fed. R. Civ. P. 56(a), 56(c); Mora v.
ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> Under summary judgment practice, the moving
> party always bears the initial responsibility
> of informing the district court of the basis
> for its motion, and identifying those
> portions of 'the pleadings, depositions,
> answers to interrogatories, and admissions on
> file together with the affidavits, if any,'
> which it believes demonstrate the absence of
> a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. at 323 (quoting Rule 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 14 Wall. 442, 448, 20 L. Ed. 867 (1872)).

///

///

///

As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

**ANALYSIS**

Prisoner claims for allegedly constitutionally inadequate medical care are governed by the Eighth Amendment. City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 243-44 (1983). Plaintiff's claim that Defendants were deliberately indifferent to his medical needs must be analyzed under the Eighth Amendment's proscription against cruel and unusual punishment. Id.

Plaintiff faces a substantial threshold in establishing that Defendants herein had the requisite deliberate indifference.

A prison official acts with such indifference only if he knows of and disregards an excessive risk to inmate health and safety. Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002). Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991). Instead, officials must be subjectively aware of a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Either inaction or action in the face of such knowledge, however, is enough to support liability. Id. at 842. Significantly, whether or not a prison official has the required knowledge "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. Id. (internal citations omitted).

The propriety of summary judgment in this case boils down to whether either Defendant Yolo County or its Sheriff, Defendant Prieto, were deliberately indifferent to Plaintiff's serious medical needs. That Plaintiff's medical needs were ultimately serious can hardly be questioned. He sustained a spleen injury as a result of his altercation involving other inmates that required an emergency splenectomy because his spleen had literally ruptured into two pieces. For purposes of deliberate indifference, a "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) (citations omitted); accord, Chance v. Armstrong,

1    143 F.3d 698, 702 (2d Cir. 1998).  As the Declaration of Barry
2    Gardiner, M.D., submitted in opposition to this motion, attests,
3    without prompt medical attention a ruptured spleen may
4    potentially be fatal.  See Gardiner Decl., ¶ 6.

5          Since the serious nature of Plaintiff's condition appears
6    readily apparent, the critical inquiry then becomes whether
7    either Defendant can be held accountable for an awareness of
8    Plaintiff's needs sufficient for purposes of imposing liability.
9    As indicated above, the Supreme Court's decision in Farmer
10   indicates that the required knowledge can be inferred from
11   circumstantial evidence, including the very fact that the risk at
12   issue was obvious.  Farmer v. Brennan, 511 U.S. at 842.
13   Defendants are correct, however, in asserting that any liability
14   in this regard cannot be on a respondeat superior basis and
15   instead must derive from their own personal action or inaction.
16   An official's general responsibility for supervising the
17   operations of a prison is insufficient to establish the needed
18   personal involvement.  See Wesley v. Davis, 333 F. Supp. 2d 888,
19   892 (C.D. Cal. 2004).  A prison official can, however, be liable
20   for his own culpable action or inaction in the training,
21   supervision or control of subordinates, if that action evinces a
22   reckless or callous indifference to the rights of others.  See
23   Menotti v. City of Seattle, 409 F.3d 1113, 1149 (9th Cir. 2005).
24   Deliberate indifference can be inferred through an established
25   practice or custom that violates a prisoner's rights.  Lolli v.
26   County of Orange, 351 F.3d 410, 421 (9th Cir. 2003).
27   ///
28   ///

10

Liability can exist where a supervisory official implements a
policy or practice so deficient that the policy "itself is a
repudiation of constitutional rights." Hansen v. Black, 885 F.2d
642, 646 (9th Cir. 1989); see also Gibson v. County of Washoe,
290 F.3d 1175, 1187-88 (9th Cir. 2002).

Additionally, in order to establish liability under
42 U.S.C. § 1983, a local government's policy or practice must be
the "moving force of the constitutional violation." Polk
County v. Dodson, 454 U.S. 312, 326 (1981) (citing Monell v.
New York City Dept. Of Social Servs., 436 U.S. 658, 694 (1978)).
The lack of needed policy can suffice where the lack of adequate
training and/or procedures is "so obvious, and the inadequacy so
likely to result in the violation of constitutional rights, that
the policy makers of the city can reasonably be said to have been
deliberately indifferent to the need." City of Canton v. Harris,
489 U.S. 378, 390 (1989). In that event, the Supreme Court
notes, "the failure to provide proper training may fairly be said
to represent a policy for which [the governmental entity] is
responsible, and for which [it] may be liable if it actually
causes injury." Id.

Here, at least on the basis of Plaintiff's claimed version
of events, we have up to seven or eight repeated requests for
medical care, requests that were accompanied by unequivocal
descriptions of severe medical distress like incontinence,
vomiting, vision failure and extreme abdominal pain. Defendants'
own records document, over a period of some 18 hours, as many as
24 potential contacts with Plaintiff as this distress allegedly
escalated.

11

Nonetheless, contacts made with Plaintiff by some seven different correctional officers over three shifts all failed to result in any urgent medical referral until a point when Plaintiff was only semi-responsive and without a palpable pulse or pupil response. At least according to Plaintiff, all the officers did was tell him to wait until "pill call" the following morning (an option only supposed to be utilized for routine medical requests) and to quit using his call button.

These issues plainly raise factual issues with respect to the level of the Defendants' knowledge, and whether that knowledge amounted to deliberate indifference, which are not amenable to determination on summary judgment. A consistent pattern of reckless or negligent conduct may be sufficient to establish deliberate indifference to serious medical needs. DeGidio v. Pung, 920 F.2d 525, 533 (8th Cir. 1990). As indicated above, whether or not a prison official has sufficient knowledge of risks demonstrating such indifference is a question of fact that should be assessed by the finder of fact upon examination of all the evidence, including inference from circumstantial evidence. Farmer v. Brennan, supra, 511 U.S. at 842. In the present matter, the pervasive and widespread indifference alleged by Plaintiff, which extended over different shifts and involved numerous officers, may well be enough to implicate Defendants as having the requisite knowledge of what was occurring.

///

///

///

///

12

General issues of material fact are present with respect to whether there were outward signs of distress that should have been obvious to officers performing welfare checks, even beyond the issue of whether Plaintiff's own direct reporting of distress and repeated requests for medical attention should have elicited a different response. Clearly, a multi-level factual analysis has to occur with respect to all these allegations that cannot be made within the confines of this motion. Plaintiff has presented enough information to survive summary judgment.

With respect to so-called Monell liability, which provides for liability under 42 U.S.C. § 1983 if Plaintiff can show that a municipal policy or custom caused his injury, Defendants argue that Plaintiff's claims amount to a "single incident of unconstitutional action by a non-policy making employee [that] is insufficient to establish the existence of [the requisite] municipal policy or custom." Defs.' Opening Memo, 12:23-25, citing McDade v. West, 223 F.3d 1135, 1141 (9th Cir. 2000); see also Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) ("[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy").

Under the circumstances present here, Defendants' depiction of Plaintiff's experience as, at best, isolated or sporadic, and consequently not amenable to Monell liability, also fails for purposes of summary judgment.

///

///

13

It should first be emphasized that Plaintiff's version of events must be assumed as true in adjudicating a motion for summary judgment, even if evidence produced by the moving party, here Defendants, may conflict.  See, e.g., T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).  All inferences must be drawn in the light most favorable to the non-moving party, here Plaintiff.  Id.  In the present matter, as enumerated above, Plaintiff does far more than identify only an isolated or sporadic incident; to the contrary, he describes a similar practice of refusing medical care that extended across shift lines and involved numerous officers. Again, those allegations, which have to be assumed as true for purposes of this motion, are enough to defeat summary judgment as to Plaintiff's Monell claims.  A jury could infer from Plaintiff's description of what occurred that a custom or practice of ignoring inmates' serious medical needs was indeed present.

///
///
///
///
///
///
///
///
///
///
///

14

**CONCLUSION**

For all the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 29) is DENIED.[3]

IT IS SO ORDERED.

Dated: April 6, 2012

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

---

[3] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefs in accordance with E.D. Local Rule 230(g).

15